# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

JOHNNY MULLER, JR.,

        Plaintiff,

v.                                                    No. CIV-12-0538 LAM

CAROLYN W. COLVIN,[1] Commissioner
of the Social Security Administration,

        Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Plaintiff's *Motion to Reverse and Remand for a Rehearing, With Supporting Memorandum (Doc. 17)*, filed December 11, 2012.  In accordance with 28 U.S.C. § 636(c)(1) and Fed. R. Civ. P. 73(b), the parties have consented to the undersigned United States Magistrate Judge to conduct all proceedings and enter a final judgment in this case. *See* [*Docs. 4* and *7*].  On February 19, 2013, Defendant filed *Defendant's Response to Plaintiff's Motion to Reverse or Remand Administrative Agency Decision (Doc. 18)*, and, on March 5, 2013, Plaintiff filed a *Reply to Defendant's Response to Motion to Reverse or Remand Administrative Agency Decision (Doc. 19)* and *Notice of Completion of Briefing (Doc. 20)*.  The Court has considered Plaintiff's motion, Defendant's response, Plaintiff's reply, and the relevant law.  Additionally, the Court has meticulously reviewed and considered the entire administrative record.

---

[1]Pursuant to Fed. R. Civ. P. 25(d), Ms. Colvin, who is the new Commissioner of the Social Security Administration, was automatically substituted as the named defendant in this case in place of the former Commissioner, Michael J. Astrue.

[*Docs. 11* and *12*].  For the reasons set forth below, the Court **FINDS** that Plaintiff's motion should be **GRANTED** and the decision of the Commissioner of the Social Security (hereinafter "Commissioner") should be **REMANDED**.

## I.  Procedural History

On March 6, 2009, Plaintiff filed applications for Supplemental Security Income (hereinafter "SSI") and Disability Insurance Benefits (hereinafter "DIB"), alleging that he became disabled on February 9, 2009.  [*Doc. 11-7* at 2-9 and 10-12].  Plaintiff stated that he became disabled due to "[s]hort attention span/bipolar/depression/anxiety." [*Doc. 11-8* at 7].  Both applications were denied at the initial level on April 29, 2009 (*Doc. 11-6* at 2-5 and 6-8) and at the reconsideration level on June 24, 2009 (*id.* at 12-14 and 15-18).  Pursuant to Plaintiff's request (*id.* at 20-21), on April 22, 2010, Administrative Law Judge Ann Farris (hereinafter "ALJ") conducted a hearing. [*Doc. 11-4* at 19-60].  Plaintiff was represented by counsel and testified at the hearing.  *Id.* at 21, 25-41.  Plaintiff's fiancée also testified at the hearing (*id.* at 42-51), as did Vocational Expert Pamela Bowman (hereinafter "VE") (*id.* at 51-58 and *Doc. 11-6* at 49-50).

On August 25, 2010, the ALJ issued her decision, finding that under the relevant sections of the Social Security Act, Plaintiff was not disabled.  [*Doc. 11-4* at 5-18].  Plaintiff requested that the Appeals Council review the ALJ's decision (*Doc. 11-3* at 64-65), and, on March 22, 2012, the Appeals Council denied Plaintiff's request for review (*id.* at 2-6), which made the ALJ's decision the final decision of the Commissioner.  On May 18, 2012, Plaintiff filed his complaint in this case. [*Doc. 1*].

## II.  Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992)).  If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief.  *See Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003).  Courts should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner.  *Hamlin*, 365 F.3d at 1214; *Langley*, 373 F.3d at 1118.

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Langley*, 373 F.3d at 1118 (citation and quotation marks omitted); *Hamlin*, 365 F.3d at 1214 (citation and quotation marks omitted); *Doyal*, 331 F.3d at 760 (citation and quotation marks omitted).  An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it."  *Langley*, 373 F.3d at 1118 (citation and quotation marks omitted); *Hamlin*, 365 F.3d at 1214 (citation and quotation marks omitted).  While a court may not re-weigh the evidence or try the issues *de novo*, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met."  *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (citations omitted).  "The

possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

### III. Applicable Law and Sequential Evaluation Process

For purposes of DIB and SSI, a person establishes a disability when he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."   42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 405.1505(a), 416.905(a).  In light of this definition for disability, a five-step sequential evaluation process (SEP) has been established for evaluating a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).  At the first four steps of the SEP, the claimant has the burden to show that:  (1) the claimant is not engaged in "substantial gainful activity;" and (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and either (3) the claimant's impairment(s) either meet(s) or equal(s) one of the "Listings" of presumptively disabling impairments; or (4) the claimant is unable to perform his "past relevant work."  20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261.  At the fifth step of the evaluation process, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other work in the national economy, considering his residual functional capacity (hereinafter "RFC"), age, education, and work experience.  *Grogan*, 399 F.3d at 1261.

## IV.  Plaintiff's Age, Education, Work Experience,
## and Medical History; and the ALJ's Decision

Plaintiff was born on September 26, 1969.  [*Doc. 11-7* at 2].  Plaintiff testified that he "went to the tenth grade in school," and was in special education in all subjects.  [*Doc. 11-4* at 36]. Plaintiff has worked as a: busboy, cashier, cook, dishwasher, driver, general laborer/paper inserter, health care provider, loader, lot attendant, maintenance worker, mechanic helper, security guard, server, tire and lube worker, tow-truck driver, and valet parker.  [*Doc. 11-8* at 8].  Plaintiff alleges that he became disabled on February 9, 2009, and he is unable to work because of "[s]hort attention span/bipolar/depression/anxiety."  *Id.* at 7.

Plaintiff's medical records document treatment and records from: Dr. Finian J. Murphy and UNM Hospitals [*Doc. 11-3* at 9-44];[2] Dr. Eric Benson, M.D.; and UNM Health Sciences Center [*Docs. 12-2* and *12-4*].  Plaintiff's medical records also include: a Disability Determination Examination by Louis Wynne, Ph.D., dated April 14, 2009 (*Doc. 12-1* at 2-4); a Psychiatric Review Technique by Jill Blacharsh, M.D., dated April 29, 2009 (*id.* at 5-18); a Mental Residual Functional Capacity Assessment by Jill Blacharsh, M.D., dated April 29, 2009 (*id.* at 19-22); and a Case Analysis by W. Logan, dated June 15, 2009 (*id.* at 23).  Where relevant, Plaintiff's medical records are discussed in more detail below.

At step one of the five-step evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 9, 2009, the alleged onset date of Plaintiff's disability. [*Doc. 11-4* at 7].  At step two, the ALJ found that Plaintiff has the following severe impairments:

---

[2]The Court addresses below whether this evidence was properly before the Appeals Council.

"borderline intellectual functioning and polysubstance abuse." *Id.* at 8.  At the third step, the ALJ found that Plaintiff's impairments, including the substance abuse, meet Listings 12.02 and 12.09 found in 20 C.F.R. § 404, Subpt. P, Appx. 1 (20 C.F.R. §§ 404.1520(d) and 416.920(d)).  *Id.* at 8-9. The ALJ further found that Plaintiff "is not credible concerning his statements regarding his work activity, educational background, activities of daily living, psychotic symptoms, and statements concerning his abstinence from drugs and alcohol," but that he "is accorded some limited credibility regarding borderline intellectual functioning since this [is] supported by medical and other independent sources." *Id.* at 9.

Next, the ALJ determined that, if Plaintiff stopped the substance abuse, Plaintiff's remaining limitations would cause more than a minimal impact on his ability to perform basic work activities, so the ALJ found that Plaintiff has a severe medically determinable impairment associated with borderline intellectual functioning.  *Id.*  However, the ALJ found that, if Plaintiff stopped the substance abuse, he would not have an impairment or combination of impairments that meet or medically equal any of the impairments listed in 20 C.F.R. § 404, Subpt. P, Appx. 1 (20 C.F.R. §§ 404.1520(d) and 416.920(d)).  *Id.*

Before step four, the ALJ determined that, if Plaintiff stopped the substance abuse, he would have the Residual Functional Capacity ("RFC") "to perform a full range of work at all exertional levels, but with the following nonexertional limitations:" Plaintiff can perform simple routine tasks with short simple instructions; Plaintiff can have no interaction with the public but can have occasional superficial interactions with co-workers and regular supervisors; and Plaintiff should perform no math calculations. *Id.* at 10.  In support of the RFC finding, the ALJ stated that, while

Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms," Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [ALJ's RFC] assessment. *Id.* at 12. In support of this finding, the ALJ discussed: Plaintiff's testimony concerning his work history, substance abuse, and activities; Plaintiff's fiancée's testimony about Plaintiff's activities; the psychological consultative examination conducted by Dr. Wynne; and the Mental RFC Assessment and Psychiatric Review Technique conducted by the state agency doctor. *Id.* at 10-11. The ALJ noted that Plaintiff supplied no medical evidence concerning his psychological impairments. *Id.* at 11. At step four, the ALJ found that, if Plaintiff stopped the substance abuse, Plaintiff would be unable to perform any of his past relevant work, so the ALJ proceeded to the fifth step. *Id.* at 12.

At the fifth and final step, the ALJ noted that Plaintiff was 39 years old at the time of his alleged onset date, has a limited education, and is able to communicate in English. *Id.* The ALJ stated that the VE was asked "whether jobs exist in the national economy for a hypothetical individual with [Plaintiff's] age, education, work experience, and the [RFC Plaintiff] would have if he stopped the substance abuse," and the VE testified that such an individual would be able to perform the requirements of representative occupations such as: odd job worker, industrial cleaner, advertising material distributor, laborer/cleaner, and shipping and receiving weigher. *Id.* at 13. The ALJ stated that "the [VE's] testimony is consistent with the information contained in the Dictionary of Occupational Titles." *Id.* The ALJ concluded that, if Plaintiff stopped the substance abuse, he "would be capable of making a successful adjustment to work that exists in significant numbers in

the national economy." *Id.* The ALJ, therefore, determined that, because Plaintiff would not be disabled if he stopped the substance abuse, the substance abuse disorder is a contributing factor material to the determination of disability, and, thus, Plaintiff was not disabled within the meaning of the Social Security Act. *Id.* at 14.

## V.  Analysis

Plaintiff contends that the ALJ erred in her RFC assessment because: (1) the ALJ improperly found that Plaintiff's substance abuse is material to the finding of disability; (2) the ALJ's RFC finding is not supported by the evidence in the record; (3) the VE's testimony was contrary to the law; and (4) the ALJ's credibility determination is contrary to the evidence and the law.  [*Doc. 17* at 9-23].  As relief, Plaintiff asks the Court to remand the case for a new hearing.  *Id.* at 23.  In his response, Defendant disputes Plaintiff's contentions, and states that the ALJ's decision was properly supported by the evidence in the record, and the ALJ used correct legal standards in evaluating the evidence, so the Commissioner's final decision should be affirmed.  [*Doc. 18* at 5-16].

### A.  *The ALJ's Finding Regarding Plaintiff's Alcohol Abuse*

The Social Security Act provides that "[a]n individual shall not be considered to be disabled . . . if alcoholism or drug addiction would (but for this paragraph) be a contributing factor material to the Commissioner's determination that the individual is disabled."  42 U.S.C. §§ 423(d)(2)(C); *see also* 20 C.F.R. §§ 404.1535, 416.935.  If an ALJ finds that the claimant is disabled and has medical evidence of the claimant's drug addiction or alcoholism, the ALJ "must determine whether . . . drug addiction or alcoholism is a contributing factor material to the determination of disability." 20 C.F.R. §§ 404.1535(a), 416.935(a).  The "key factor" in making this determination is whether

the claimant would still be found disabled if he stopped using drugs or alcohol. 20 C.F.R. §§ 404.1535(b)(1), 416.935(b)(1). A two-step analysis is required to determine whether drug addiction or alcoholism is a contributing factor material to a determination of disability. First, the ALJ must determine which of the claimant's physical and mental limitations would remain if the claimant refrained from drug or alcohol use. Then the ALJ must determine whether the claimant's remaining limitations would be disabling. 20 C.F.R. §§ 404.1535(b)(2), 416.935(b)(2). If the claimant's remaining limitations would not be disabling, the claimant's alcoholism or drug addiction is a contributing factor material to a determination of disability and benefits will be denied. 20 C.F.R. §§ 404.1535(b)(2)(i), 416.935(b)(2)(i). If the claimant would still be considered disabled due to his remaining limitations, the claimant's alcoholism or drug addiction is not a contributing factor material to a determination of disability and the claimant is entitled to benefits. 20 C.F.R. §§ 404.1535(b)(2)(ii), 416.935(b)(2)(ii).

### 1. The ALJ's Finding Regarding Listing 12.02(A)

Plaintiff's first claim regarding the ALJ's finding that Plaintiff would not be disabled if he stopped the substance abuse, is that the ALJ erred by failing to delineate which of the seven criteria for Listing 12.02(A) Plaintiff met when the ALJ included Plaintiff's polysubstance abuse. [*Doc. 17* at 9-10]. Plaintiff contends that this error "makes it impossible to counter [the ALJ's] claim that [Plaintiff] ceases to meet the Listing when he is abstinent." *Id.* In response, Defendant states that, while the ALJ did not delineate which of the seven criteria for Listing 12.02(A) Plaintiff met, Plaintiff alleged that he had memory impairment and a disturbance in mood as a result of depression, which meet the criteria of Listing 12.02(A)(2) and 12.02(A)(5), respectively. [*Doc. 18* at 5] (citing

9

*Doc. 11-8* at 7).  In his reply, Plaintiff states that the Commissioner may not provide a *post hoc* rationalization for the ALJ's decision.  [*Doc. 19* at 1].

Under Listing 12.02, "[t]he required level of severity for these disorders is met when the requirements in both A and B are satisfied."  The Court finds that the ALJ erred by failing to delineate which of the seven criteria for Listing 12.02(A) Plaintiff met.  To meet Listing 12.02(A), the ALJ was required to determine whether there was a "[d]emonstration of a loss of specific cognitive abilities or affective changes and the medically documented persistence of at least one" of seven criteria.  20 C.F.R. § 404, Subpt. P, Appx. 1, "12.02 Organic Mental Disorders."  While the ALJ stated that "[t]he 'paragraph A' criteria are satisfied because [Plaintiff] has behavioral changes associated with the regular use of substances that affect the central nervous system" (*Doc. 11-4* at 8), this determination relates to Listing 12.09, and does not explain which paragraph A criteria Plaintiff meets for Listing 12.02.  *Compare* 20 C.F.R. § 404, Subpt. P, Appx. 1, "12.09 Substance Addiction Disorders," *with* "12.02 Organic Mental Disorders."  The ALJ's failure to discuss the evidence or her reasons for finding that  Plaintiff met Listing 12.02 is in error because, as Plaintiff contends, Plaintiff is therefore unable to counter the ALJ's finding that, absent his substance abuse, Plaintiff no longer meets Listing 12.02.  *See* [*Doc. 11-4* at 9] (the ALJ's finding that "[i]f [Plaintiff] stopped the substance use, the remaining limitations would not meet or medically equal the criteria of listing 12.02"); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) (finding that the ALJ's failure to discuss the evidence or reasons for determining that the claimant's impairments did not meet or equal any listed impairment was in error and stating that "[s]uch a bare conclusion is beyond meaningful judicial review").  Furthermore, as Plaintiff points out in his reply (*Doc. 19* at 1),

Defendant's attempt to remedy the ALJ's failure to state which of the criteria under Listing 12.02 Plaintiff meets by supplying two of the criteria that Plaintiff may meet (*see Doc. 18* at 5) is an impermissible *post hoc* rationalization.   *See Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) (explaining that reviewing courts may only evaluate an ALJ's decision "based solely on the reasons stated in the decision," and that it would be improper for a reviewing court or the Commissioner to "supply[] possible reasons" for an ALJ's decision after the fact) (citation omitted).   The Court, therefore, finds that this claim should be granted.

### 2. The ALJ's Finding That the Substance Abuse was Material

Next, Plaintiff contends that the ALJ erred by failing to identify a period of abstinence and determine whether Plaintiff's disability exists in times of sobriety.  [*Doc. 17* at 10-11] (relying on *Salazar v. Barnhart*, 468 F.3d 615 (10th Cir. 2006)).  Plaintiff contends that Dr. Wynne's evaluation of Plaintiff took place when Plaintiff was sober and does not support the ALJ's finding.  *Id.*  In its response, Defendant contends that the ALJ did not err in finding that Plaintiff's substance abuse is a contributing factor material to the determination of disability, because both Dr. Wynne's and Dr. Blacharsh's findings support the ALJ's decision, and, because Plaintiff did not seek mental health treatment prior to his application for benefits or during the relevant period, there was no other evidence in the record upon which the ALJ could rely.  [*Doc. 18* at 6-7].  In his reply, Plaintiff states that the Commissioner did not attempt to distinguish the *Salazar* case, and notes that the Social Security Administration has recently clarified the required analysis for determining if alcohol or drug addiction is a contributing factor material to the disability.  [*Doc. 19* at 2 n.2] (citing SSR 13-2p, 2013 WL 621536).

11

In *Salazar*, the Tenth Circuit Court of Appeals discussed the two-step analysis required when mental impairments are involved with drug and alcohol addictions. 468 F.3d at 623. The opinion describes a teletype issued by the Commissioner pertaining to "situations where a claimant has one or more other mental impairments in addition to [drug and alcohol addiction.]" *Id.* The Tenth Circuit noted that the teletype "stresses the need for careful examination of periods of abstinence and also directs that if the effects of a claimant's mental impairments cannot be separated from the effects of substance abuse, the [drug and alcohol addiction] is *not* a contributing factor material to the disability determination." *Id.* The teletype instructs that where the record is devoid of any medical or psychological report, opinion, or projection as to the claimant's remaining limitations if the claimant stopped using drugs or alcohol, an ALJ should "find that [drug and alcohol addiction] is not a contributing factor material to the determination of disability." *Id.* at 624.

Here, the ALJ relied on Dr. Wynne's assessment of Plaintiff, which took place when Plaintiff was sober. *See* [*Doc. 11-4* at 11] and [*Doc. 12-1* at 2-4]. Dr. Wynne found that Plaintiff: can read and understand basic written instructions; has a moderate limitation in concentration and ability to persist at simple work tasks; cannot interact well with the general public; would have difficulty interacting with coworkers and supervisors; might have difficulty adapting to changes in the workplace; can recognize obvious hazards; and cannot manage his own benefit payments. [*Doc. 12-1* at 4]. The ALJ also relied on the state agency physician Dr. Blacharsh's Psychiatric Review Technique and Mental RFC, which also took place when Plaintiff was sober. *See* [*Doc. 11-4* at 11] and [*Doc. 12-1* at 5-22] (stating that Plaintiff's alcohol abuse was remission (*Doc. 12-1* at 17)). In the Psychiatric Review Technique, Dr. Blacharsh found that Plaintiff: could count

backwards by 3's, but not by 7's; could remember a series of numbers forward and backward to 5; had 0/3 recall after delay; could not perform operations in simple arithmetic; was assessed as incapable of managing his own funds; was able to attend to his personal care, cook, take public transportation, and shop; needs prompting with chores and appointments; needs assistance with managing money; interacts with other family members and girlfriend and attends church; has difficulty dealing with crowds; and reports problems dealing with those in authority, memory, attention/concentration, following instructions, managing stress and change. [*Doc. 12-1* at 17]. In the Mental RFC, Dr. Blacharsh found that Plaintiff "is able to understand, remember and carry out simple instructions, make simple decisions, attend and concentrate for two hours at a time, interact adequately with co-workers and supervisors, and respond appropriately to changes in a routine work setting." *Id.* at 21.

Plaintiff contends that this evidence does not support the ALJ's finding that Plaintiff's symptoms would abate if Plaintiff discontinued the substance abuse (*Doc. 17* at 10); however, the Court finds that the opposite is true. While both Drs. Wynne and Blacharsh found that Plaintiff had certain limitations, they also both found that Plaintiff could understand, remember and carry out basic written instructions and make simple decisions. Because Plaintiff was sober at the time of these assessments, the ALJ, therefore, was able to consider Plaintiff's limitations during a period of abstinence, in compliance with the teletype discussed in *Salazar*. This case is distinguishable from the facts of *Salazar* because, in *Salazar*, the evidence showed that the claimant's mental impairments <u>worsened</u> after forty days of sobriety, and she had to be hospitalized to treat those problems. 468 F.3d at 624. This case is also distinguishable from *McGoffin v. Barnhart*,

13

288 F.3d 1248, 1253 (10th Cir. 2002), where the Tenth Circuit found that the ALJ improperly relied on the opinion of a consulting physician who only examined the claimant one time while she was living in a controlled residential treatment facility and was highly medicated.  The Tenth Circuit found that this was not an adequate assessment of the claimant's ability to function while sober. Here, however, the ALJ relied on evidence provided by two sources who examined Plaintiff during a period of sobriety and found that he was able to function at a certain level.  In addition, the Court rejects Plaintiff's contention that Dr. Wynne's findings that Plaintiff is moderately impaired in concentration and persistence, unable to interact with the general public, and has difficulties with co-workers, supervisors and adaptive skills, demonstrates that Plaintiff was still disabled during a period of sobriety.  *See Doc. 19* at 2.  While those limitations are required to be addressed by the ALJ in her RFC determination, which is further discussed below, the fact that Dr. Wynne found some moderate limitations during a period of sobriety does not mean that Plaintiff was necessarily disabled during that time of sobriety.  The Court further finds that the ALJ's finding complies with SSR 13-2p because the ALJ considered evidence from a period of abstinence and did not find that Plaintiff was disabled in the absence of the substance abuse.  *See* SSR 13-2p, 2013 WL 621536 at *7, ¶7(d) (explaining that a finding that the ALJ should find that a claimant's substance abuse is not material "if the record is fully developed and the evidence does not establish that the claimant's co-occurring mental disorder(s) would improve to the point of nondisability in the absence of [the substance abuse]").  The Court, therefore, finds that the evidence in the record supports the ALJ's finding that Plaintiff's substance abuse is a contributing factor material to his disability, and this claim should be denied.

### B.  The ALJ's RFC Finding

Next, Plaintiff contends that the ALJ erred by failing to include Plaintiff's mental and physical limitations in her RFC determination. [*Doc. 17* at 12-17].  Specifically, Plaintiff contends that the ALJ failed to explain why she rejected Dr. Wynne's and Dr. Blacharsh's opinions that Plaintiff has moderate limitations in: his ability to persist at simple tasks; maintaining concentration, persistence or pace; the ability to perform within a schedule; maintaining regular attendance; being punctual; sustaining an ordinary routine; and making simple work-related decisions.  *Id.* at 12-13. Plaintiff further contends that the ALJ failed to explain why she rejected Dr. Wynne's opinions that Plaintiff would have difficulty interacting with co-workers and supervisors, and failed to include limitations regarding Plaintiff's anxiety, social functions, and use of his hands and fingers.  *Id.* at 14-17.

In response, Defendant states that the ALJ's RFC determination is consistent with Dr. Blacharsh's ultimate conclusion that Plaintiff can understand, remember and carry out simple instructions and can make simple decisions, attend and concentrate for two hours at a time, interact adequately with co-workers and supervisors, and respond appropriately to changes in a routine setting. [*Doc. 18* at 8] (citing *Doc. 12-1* at 21).  Defendant also contends that Plaintiff failed to offer evidence of any additional limitations imposed by his anxiety and left wrist impairment, so the ALJ did not err by not including any limitations regarding these impairments in her RFC finding.  *Id.* at 9-11.

A claimant's RFC is based on how the claimant's physical and mental limitations affect the claimant's ability to work, and is "the most [a claimant] can still do despite [those] limitations."

20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *see also* SSR 96-8p, 1996 WL 374184 at *2 ("RFC is what an individual can still do despite his or her limitations.").   The ALJ must base the RFC assessment on all of the relevant evidence in the record, such as medical history, medical signs and laboratory findings, effects of treatment and symptoms, including pain, reports of daily activities, lay evidence, recorded observations, medical source statements, evidence from attempts to work, need for a structured living environment, and work evaluations, if any.  *Id.* at *5.  With regard to mental impairments, the ALJ's "determination of [a claimant's] mental RFC involves the consideration of evidence, such as: [h]istory, findings, and observations from medical sources (including psychological test results), regarding the presence, frequency, and intensity of hallucinations, delusions or paranoid tendencies; depression or elation; confusion or disorientation; conversion symptoms or phobias; psychophysiological symptoms; withdrawn or bizarre behavior; anxiety or tension."  SSR 85-16, 1985 WL 56855 at *2.

### 1. Plaintiff's Nonexertional Limitations

The ALJ found that, if abstinent, Plaintiff has the RFC to perform a full range of work at all exertional levels, with the following nonexertional limitations: "perform simple routine task [sic] with short simple instructions[,] . . . have no interaction with the public but can have occasional superficial interactions with co-workers and regular supervision[, and] perform no math calculations."  [*Doc. 11-4* at 10].   In support of this finding, the ALJ stated that she gave considerable weight to Dr. Wynne's and Dr. Blacharsh's opinions.  *Id.* at 11-12.  The ALJ, however, failed to state why she did not include in her RFC determination Dr. Wynne's findings that Plaintiff has moderate impairments with regard to his concentration and ability to persist at simple work

tasks; difficulty interacting with his co-workers and supervisors; and difficulty adapting to changes in the workplace.  *See* [*Doc. 12-1* at 4].  The ALJ also failed to state why she did not include Dr. Blacharsh's findings in her Mental RFC Assessment that Plaintiff has moderate impairments with: maintaining social functioning; maintaining concentration, persistence, or pace; and adaptation.  *See id.* at 19-20.  The ALJ's failure to state why she rejected these findings of moderate limitations is error.  *See Haga v. Astrue*, 482 F.3d 1205, 1209 (10th Cir. 2007) ("[T]he ALJ should have explained why he rejected four of the moderate restrictions on Dr. Rawlings' RFC assessment while appearing to adopt the others.").  An ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."  *Carpenter v. Astrue*, 537 F.3d 1264, 1265 (10th Cir.2008) (citation and internal quotation marks omitted).  In addition, because it is not obvious whether or not Dr. Blacharsh's findings of moderate limitations in Section I of the Mental RFC Assessment are consistent with her conclusion in Section III that Plaintiff "is able to understand, remember and carry out simple instructions, make simple decisions, attend and concentrate for two hours at a time, interact adequately with co-workers and supervisors, and respond appropriately to changes in a routine work setting," the ALJ could not properly rely on Dr. Blacharsh's summary in Section III.  *See Baysinger v. Astrue*, Civil Action No. 11-cv-00333-WYD, 2012 WL 1044746, at *6 (D.Colo. March 28, 2012) (unpublished) (explaining that the state agency examiner should have included the moderate limitations in the Section III summary or at least ensured that they were represented in some manner).  The Court, therefore, finds that the ALJ erred by failing to state why she rejected Dr. Wynne's and Dr. Blacharsh's findings of moderate impairments regarding Plaintiff's nonexertional limitations.

The Court notes, however, that the ALJ did not err by failing to include the moderate limitations identified by Dr. Blacharsh in the "paragraph B criteria"[3] of her Psychiatric Review Technique (hereinafter, "PRT") in the ALJ's RFC finding.  *See Doc. 12-1* at 15.  These criteria are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process, and are not required to be included at the RFC finding at step 4.  *See Anderson v. Colvin*, No. 12-1102, 2013 WL 1339379, *6 (10th Cir. April 4, 2013) (unpublished) ("We agree with the Commissioner that the ALJ was not required to include any of Dr. Pelc's B criteria opinions in his RFC assessment.") (citation and internal quotation marks omitted); *see also* SSR 96-8p, 1996 WL 374184 at *4 (explaining that "the [ALJ] must remember that the limitations identified in the 'paragraph B' . . . criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process").

Plaintiff also contends that the ALJ should have included impairments related to Plaintiff's anxiety and social problems in her RFC finding.  [*Doc. 17* at 15-16].  Plaintiff states that his anxiety is supported by findings of Dr. Murphy, Dr. Wynne and Dr. Blacharsh regarding Plaintiff's mental limitations.  *Id.* at 15 (citing *Doc. 11-3* at 10 and *Doc. 12-1* at 2, 4, and 15).  The  Court already addressed the ALJ's failure to take into consideration the moderate limitations found by Dr. Wynne and Dr. Blacharsh, and, to the extent those findings relate to Plaintiff's anxiety and/or social problems, they must be considered upon remand.

---

[3]"Paragraph B" criteria are used by the ALJ to determine whether an individual meets a mental impairment listing at step three, and the criteria are: "[a]ctivities of daily living; social functioning; concentration, persistence, or pace; or episodes of decompensation."  20 C.F.R. pt. 404, subpt. P, app. 1, Listing 12.00C - Mental Disorders.

With regard to Dr. Murphy's diagnosis of an anxiety disorder, that evidence was submitted to the Appeals Council on the same day the Appeals Council made its decision to uphold the ALJ's decision, so it does not appear that it was considered by the Appeals Council when it made its decision.  *See* [*Doc. 11-3* at 2-6] (Appeals Council decision dated March 22, 2012) and *id.* at 9-13 (Plaintiff's attorney's submission of Dr. Murphy's evaluation, sent to the Appeals council on March 22, 2012).[4]  Any medical evidence a claimant wants the Appeals Council to consider must be submitted with a request for review within sixty days after receipt of the ALJ's decision, or a claimant must file a written request to extend the deadline.  20 C.F.R. §§ 404.968, 416.1468.  On January 10, 2012, Plaintiff's attorney asked for an extension of thirty days to submit new evidence, which was granted by the Appeals Council on February 2, 2012 until March 3, 2012.  *See* [*Doc. 11-3* at 48 and 45, respectively].  The evaluation by Dr. Murphy was submitted past the thirty-day extension deadline and, therefore, was not properly before the Appeals Council when it made its decision.  The Court may remand to the agency to consider new and material evidence when "there is good cause for failing to incorporate such evidence in the earlier proceeding."  *Nguyen v. Shalala*, 43 F.3d 1400, 1403 (10th Cir. 1994) (citation omitted).  However, Plaintiff makes no attempt to argue that this case should be remanded so that the agency can consider this evidence and, therefore, does not make a showing of "good cause" to remand the case for the agency to consider the evidence.  *See Miller v. Barnhart*, No. 06-2000, 194 Fed. Appx. 519, 522, 2006 WL 2556367 (10th Cir. Sept. 6, 2006) (unpublished) (finding that "a remand  by the district court was not

---

[4]The Appeals Council's decision states that it received a "Representative Brief signed by Edward W. Goodman, Esq." and was making that part of the record, but makes no mention of Dr. Murphy's evaluation.  *See* [*Doc. 11-3* at 6] (citing *Doc. 11-9* at 5-12) (Mr. Goodman's brief).

warranted because no showing was made that there was good cause for the failure to incorporate the new evidence into the agency proceeding"). Because the Court finds that this case should be remanded for other reasons, the agency is directed on remand to consider whether Dr. Murphy's evaluation should be considered as part of the evidence in the record.

The Court next addresses Plaintiff's contention that the ALJ erred in discounting Plaintiff's testimony about his anxiety because Plaintiff does not take any medication or attend any counseling for anxiety. [*Doc. 17* at 15] (citing *Doc. 11-4* at 10). Plaintiff states that this was error because an ALJ may not require a claimant to seek mental health treatment before finding that the impairment affects the claimant's ability to perform basic work activities, and relies on *Fleetwood v. Barnhart*, No. 05-6373, 211 Fed. Appx. 736, 2007 WL 18922 (10th Cir. Jan. 4, 2007) (unpublished), for this contention. [*Doc. 17* at 15]. *Fleetwood*, however, does not support Plaintiff's claim regarding the ALJ's RFC determination because, in that case, the Tenth Circuit found that the claimant was not required to see a specialist in the mental health profession in order for the ALJ to find at step two that the claimant has a severe mental impairment, and Plaintiff's contention pertains to the ALJ's RFC finding at step four. 211 Fed. Appx. at 739. In addition, in *Fleetwood* the Tenth Circuit found that the medical evidence from the claimant's treating physician and consulting doctor "repeatedly refers to [the claimant's] anxiety and panic attacks and to [claimant] taking medications for these problems," and that Plaintiff had been treated for an anxiety disorder for nearly two years. *Id.* In contrast, in this case there is no evidence in the record that Plaintiff was taking any medication for or was being treated for anxiety, which further distinguishes Plaintiff's claim from that of the

claimant in *Fleetwood*.  The Court, therefore, finds that the ALJ did not err in failing to include a limitation regarding Plaintiff's anxiety in her RFC finding based on Plaintiff's testimony.

Plaintiff next contends that the ALJ's finding that he has a marked limitation in social functioning conflicts with the ALJ's RFC finding that Plaintiff can have occasional interactions with co-workers and undergo regular supervision.  [*Doc. 17* at 16].  Plaintiff's contention is without merit for two reasons.  First, the ALJ found that Plaintiff has a marked limitation with social functioning when she was considering Plaintiff's substance abuse disorder, but found that, if Plaintiff were to stop the substance abuse, he would only have moderate difficulties with social functioning.  *Compare* [*Doc. 11-4* at 8], *with id.* at 9.  Second, the ALJ's finding regarding Plaintiff's limitations with social functioning was made at step three of the sequential evaluation process and the ALJ was not required to take that finding into consideration in the ALJ's RFC assessment.  *See Anderson*, 2013 WL 1339379 at *6 (explaining that an ALJ is not required to include the limitations found at steps two and three of the sequential evaluation process in the ALJ's RFC assessment); *see also* SSR 96-8p, 1996 WL 374184 at *4 (explaining that "the [ALJ] must remember that the limitations identified in the 'paragraph B' . . . criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process").  The ALJ, therefore, was not required to include her step-three findings regarding Plaintiff's nonexertional limitations in her RFC assessment.

### 2.  *Plaintiff's Physical Limitations*

In her decision, the ALJ noted that Plaintiff sustained a left distal radius fracture in June 2009 and "underwent an open reduction and internal fixation and carpal tunnel release

surgery." [*Doc. 11-4* at 8].  The ALJ stated that Dr. Benson's follow-up report from April 2010 noted that a radiological study found that Plaintiff's fracture was well-healed, and that there was no objective medical evidence that the fracture or carpal tunnel cause Plaintiff more than minimal limitations, so the ALJ did not find them to be severe impairments.  *Id.*  The ALJ further stated that she did not assess any exertional limitations on Plaintiff's functional capacity because "neither the medical evidence nor the claimant's testimony supports any exertional limitations or other medical conditions that would normally be expected to produce exertional limitations." [*Doc. 11-4* at 8].

Plaintiff contends that the ALJ erred by failing to include any manipulative limitation regarding Plaintiff's fracture and carpal tunnel syndrome in her RFC finding.  [*Doc. 17* at 16-17].  Plaintiff notes that he testified at his hearing that he still has problems relating to the fracture and carpal tunnel syndrome, and that in September 2009 Dr. Benson noted that Plaintiff had some residual symptoms from carpal tunnel syndrome and advised Plaintiff to avoid heavy lifting with his left hand.  *Id.* at 16.[5]  Plaintiff contends that the ALJ's finding that Plaintiff can perform all levels of work is contrary to Dr. Benson's advice that Plaintiff should avoid heavy lifting with his left hand.  *Id.* (citing *Doc. 12-2* at 6).

Defendant, however, contends that the ALJ's RFC finding does not conflict with other observations made by Dr. Benson in September 2009, such as that Plaintiff's sensation was intact to light touch over the distribution of the median nerve, and that Plaintiff had intact finger flexion,

---

[5]Plaintiff also states that Dr. Murphy noted that Plaintiff had difficulty grabbing objects with his left hand (*Doc. 17* at 16, citing *Doc. 11-3* at 10).  As explained *supra*, the Court will not consider this evidence because it was not before the ALJ or the Appeals Council, and Plaintiff does not contend that this case should be remanded so that the agency can consider this evidence.

extension and abduction.  [*Doc. 18* at 10] (citing *Doc. 12-2* at 6).  In addition, Defendant notes that in a follow-up visit with Dr. Benson in April 2010, Dr. Benson observed that: Plaintiff's sensation was intact in the radial, ulnar and median nerve distribution; Plaintiff had a very good range of motion of all fingers and the thumb; Plaintiff had no tenderness over the distal radius; and Plaintiff's x-rays showed a well-healed fracture.  [*Doc. 18* at 10-11] (citing *Doc. 12-4* at 22).

The Court finds that the ALJ's RFC finding is not contrary to the evidence in the record. Even though, in September 2009, Dr. Benson advised Plaintiff to avoid heavy lifting with his left hand, by April 2010, Dr. Benson gave Plaintiff no restrictions on his activities, and found that, even though Plaintiff "still has some occasional episodes of pain, [] overall he has a well healed fracture and is doing well."  [*Doc. 12-4* at 22].  Dr. Benson released Plaintiff "to activities as tolerated and follow up on an as needed basis."  *Id.*  The Court, therefore,  finds that Dr. Benson's findings do not conflict with the ALJ's RFC determination.  While Plaintiff testified that he has pain in his left hand and trouble lifting with that hand, the ALJ noted that Plaintiff "has no problems bathing or dressing, can cook, vacuum, mop, and sometimes shops for groceries."  [*Doc. 11-4* at 10].  Plaintiff cites to no other evidence before the Court regarding his ability to lift or carry.  The Court, therefore, finds that the evidence in the record supports the ALJ's RFC finding and this claim should be denied.

### C.  The VE's Testimony

Next, Plaintiff contends that the VE's testimony was in error because the ALJ did not advise the VE that Plaintiff has a limited education and borderline intellectual functioning, and did not include Plaintiff's limitations in concentration, persistence and pace, in the hypothetical question presented to the VE.  [*Doc. 17* at 17-19].  Plaintiff further contends that the VE's testimony is not

consistent with the Dictionary of Occupations Titles (hereinafter, "DOT"), because the jobs that the VE testified Plaintiff could perform are beyond Plaintiff's capabilities.  *Id.* at 19-22.

In response, Defendant contends that the VE's testimony was not in error because the VE testified that she had reviewed the exhibits about Plaintiff and heard Plaintiff's testimony about his education, and that Plaintiff's attorney did not correct any perceived deficiencies in the VE's testimony at the hearing.  [*Doc. 18* at 11-12].  Defendant also contends that the VE's testimony appropriately takes in to account Plaintiff's limited ability to concentrate, and that the jobs identified by the VE are appropriate for Plaintiff's capabilities.  *Id.* at 12-14.

In his reply, Plaintiff states that he "abandons his claim that the ALJ was required to include details about [Plaintiff's] cognitive functioning in the hypothetical question, because the VE was in the hearing room when counsel reviewed [Plaintiff's] cognitive issues and special education history."  [*Doc. 19* at 4].  Plaintiff states that he "does not, however, abandon his claim that the ALJ should have clarified whether [Plaintiff] could perform [specific vocation preparation] 2 jobs in light of his cognitive issues and his other moderate and marked impairments."  *Id.* at 5.  The Court declines to reach Plaintiff's remaining claim regarding the VE's testimony because the RFC assessment and any hypothetical question submitted to the VE at step-five may be affected by the agency's re-consideration on remand of Dr. Wynne and Dr. Blacharsh's findings regarding Plaintiff's mental impairments at step four.  The Court, therefore, will deny this claim without prejudice.

### D. *The ALJ's Credibility Determination*

Finally, Plaintiff contends that the ALJ's credibility determination is contrary to the evidence in the record.  [*Doc. 17* at 22].  Plaintiff states that the ALJ's statement "that many of [Plaintiff's] statements regarding his abilities and limitations are associated with a desire to secure disability benefits rather than a true estimate of his problems and abilities" (*id.*, citing *Doc. 11-4* at 9) is in error because "[t]he ALJ failed to explain how she could determine the motive behind Plaintiff's claims" (*id.*).  Plaintiff also contends that the ALJ erred by failing to state whether she found Plaintiff's fiancée's testimony credible.  Defendant contends that the ALJ's credibility determination is supported by substantial evidence in the record and is not in error.  [*Doc. 18* at 15-16].

An ALJ's decision, "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."  SSR 96-7p, 1996 WL 374186 at *4 (July 2, 1996); *see also White v. Barnhart*, 287 F.3d 903, 909 (10th Cir. 2001) ("[C]redibility determinations are peculiarly the province of the finder of fact, and should not be upset if supported by substantial evidence.") (citation and internal quotation marks omitted).  Here, the ALJ's only stated reason for finding that Plaintiff is not credible is her statement that: "it is clear that many of [Plaintiff's] statements regarding his abilities and limitations are associated with a desire to secure disability benefits rather than a true estimate of his problems and abilities."  [*Doc. 11-4* at 9].  The ALJ failed to state what evidence in the record supports this finding, and the Court does not find evidence to support it.  Defendant contends that the ALJ's finding is supported by evidence in the record that Plaintiff's

activity level contradicts his allegations that he is unable to work, and because Plaintiff reported to Dr. Wynne in April 2009 that he had been sober, but then he broke his arm while drunk on June 1, 2009. [*Doc. 18* at 15]. First, this is an impermissible *post hoc* rationalization made by Defendant since the ALJ did not state that these were her reasons for finding that Plaintiff was not credible. *See Robinson*, 366 F.3d at 1084 (explaining that reviewing courts may only evaluate an ALJ's decision "based solely on the reasons stated in the decision," and that it would be improper for a reviewing court or the Commissioner to "supply[] possible reasons" for an ALJ's decision after the fact) (citation omitted). In addition, this evidence does not support the ALJ's finding because: (1) even though Plaintiff and his fiancée testified that Plaintiff performs limited household chores and engages in a limited amount of activities, that does not address Plaintiff's testimony regarding his anxiety and problems with concentration (*see Doc. 11-4* at 29 and 33-36); and (2) Plaintiff's statement to Dr. Wynne on April 14, 2009, that he had stopped drinking a month earlier does not conflict with the evidence that Plaintiff broke his arm while drunk on June 1, 2009 (*see Doc. 12-1* at 3 and *Doc. 12-2* at 12). This evidence, therefore, does not explain why the ALJ found that Plaintiff's statements "are associated with a desire to secure disability benefits rather than a true estimate of his problems and abilities." [*Doc. 11-4* at 9]. The Court, therefore, finds that this claim should be granted.

In addition, the Court finds that the ALJ failed to properly consider the testimony of Plaintiff's fiancée. Plaintiff's fiancée testified that Plaintiff has problems with concentration and staying on task, and that he has issues with anxiety and socializing. *See* [*Doc. 11-4* at 43-51]. In her decision, the ALJ noted the fiancée's testimony, but did not state whether she accepted or

rejected the testimony.  *See* [*Doc. 11-4* at 11].  The Court finds that this is in error because, when

a witness' testimony conflicts with the ALJ's findings, the ALJ is required to explain why he or she

is rejecting that testimony.  *See Blea v. Barnhart*, 466 F.3d 903, 915 (10th Cir. 2006) (finding that

the ALJ's failure to discuss why he failed to take into account the Plaintiff's wife's testimony was

error).  The ALJ's findings fail to take into account Plaintiff's fiancée's testimony regarding

Plaintiff's ability to concentrate, stay on task, and his problems with anxiety, and this testimony

appears to be uncontroverted.  Therefore, the Court finds that the ALJ's failure to discuss why he

rejected this testimony does not comply with the holding in *Blea*, and this claim should be granted.

## VI.  Conclusion

IT IS THEREFORE ORDERED that, for the reasons stated above, Plaintiff's ***Motion to Reverse and Remand for a Rehearing, With Supporting Memorandum*** *(Doc. 17)* is **GRANTED** and this case is **REMANDED** to the Commissioner for further proceedings consistent with this Memorandum Opinion and Order.  A final order will be entered concurrently with this Memorandum Opinion and Order.

IT IS SO ORDERED.

*Lourdes A. Martinez*

**THE HONORABLE LOURDES A. MARTÍNEZ**
**UNITED STATES MAGISTRATE JUDGE**
**Presiding by Consent**